IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN LEADER, | : | |
|     Plaintiff | : | No. 1:12-cv-02571 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| FRANK NOONAN and KIM STUDENROTH, | : | |
| | : | |
|     Defendants | : | |

## **MEMORANDUM**

Before the Court is Defendants Frank Noonan and Kim Studenroth's motion for summary judgment. (Doc. No. 22.) The motion is fully briefed and ripe for disposition. For the reasons that follow, the Court will grant the motion.

## I.    BACKGROUND[1]

Plaintiff Jonathan Leader began employment with the Pennsylvania State Police in June 2005, and began working as a Legal Assistant in the Right-to-Know Unit at the Pennsylvania State Police department headquarters in December 2008. (Doc. No. 23 ¶¶ 1-2.) Plaintiff worked in the Unit alongside his twin brother, Jay Leader ("Jay").[2] (Id. ¶ 3.) On September 21, 2011, Jay bought a gun into the Pennsylvania State Police department headquarters. (Id. ¶ 4.) At lunch that day, Jay told Plaintiff that he had brought the gun in, and that their co-worker Brian Maksel,

---

[1] The following facts of record, taken from Defendants' statement of material facts (Doc. No. 23), are undisputed, unless otherwise noted. Defendants' statement of material facts contain specific citations to the record at each numbered paragraph.

[2] Jay Leader is also the Plaintiff in a related case, Leader v. Noonan, No. 12-2570, which brings substantially similar claims against Defendants Noonan and Sudenroth. Defendants have also moved for summary judgment in that case, which is proceeding separately from this one, and whose motion this Court addresses in a separate memorandum.

1

and possibly the former Legal Assistant Supervisor, Cindy Fisher, had seen the pistol before Jay returned it to his car. (Id. ¶ 5-7.) Around this time, Fisher reported to Captain Grimes, director of the operational records division, that Jay had brought a gun into the building. (Id. ¶ 7.) Grimes then discussed the incident with the human resources department, an internal investigation was initiated, and it was determined that troopers, including Trooper Roy Van Buskirk, would contact Jay about why he brought a gun into work. (Id. ¶¶ 9-11.) The troopers then spoke with Jay with a union representative present. (Id. ¶ 13.) Van Biskirk also took witness statements from Maksel and Fisher; Maksel said that both Jay and the Plaintiff had bulled him, and it appeared that Maksel felt threatened by the incident. (Id. ¶¶ 12, 14.) Grimes was directed to suspend Jay without pay, and did so, informing Jay that he was suspended pending an investigation concerning bringing a firearm into work. (Id. ¶¶ 15-16.)

The day after Jay brought a gun into work, Plaintiff gestured at Maksel while at work as though he were holding an imaginary rifle and told Maksel that Plaintiff had him "scoped like a big buck." (Doc. No. 23 ¶ 17.) Maksel reported this incident to Fisher and Grimes. (Id. ¶ 18.) Following the accusation, Grimes notified HR of the incident. (Id. ¶¶ 19-20.) Grimes was then instructed to speak with Plaintiff about the allegations. (Id. ¶ 20.) Grimes asked if the allegations were true and whether Plaintiff had pretended to aim a rifle at Maksel. (Id. ¶ 21.) Plaintiff admitted to making both the gesture and the statements. (Id.) Grimes asked Plaintiff if he saw a problem with this behavior, and Plaintiff responded that he did not. (Id. ¶ 21.) Grimes then told Plaintiff that he should not make statements like that, that he expected better of Plaintiff, and that his behavior was inappropriate. (Id. ¶¶ 22-23.) Grimes also asked Plaintiff why he had acted that way toward Maksel, and Plaintiff responded: "I don't know. We were

joking around." (Id. ¶ 24.) Grimes then informed Brooke Meade of HR that Plaintiff had admitted the allegation was true. (Id. ¶ 25.)

At this point, it was determined that the Internal Affairs Division would handle the investigation because Maksel alleged that he felt threatened. (Doc. No. 23 ¶ 26.) Internal Affairs then initiated an investigation regarding Jay bringing a gun into the workplace and showing to Maksel, and regarding Plaintiff's alleged threatening of Maksel. (Id. ¶ 27.) On the morning of September 23, 2011, a meeting was held with Defendant Studenroth, Meade, Grimes and three other deputies. (Id. ¶ 28.) Grimes informed everyone at the meeting that Maksel said he felt threatened by the gun incident and believed it was an escalation of the brothers' continued bullying behavior towards him. (Id. ¶¶ 29-31.) They determined that Jay would remain suspended pending further investigation, and that Plaintiff would also be suspended. (Id. ¶ 32.) Studenroth prepared two suspension letters under her signature. (Id. ¶¶ 33-34.) Plaintiff's letter read that his suspension was effective immediately, on September 23, 2011. (Id. ¶ 35.) The letter stated that he had violated Administrative Regulation ("AR") 4-6, the Code of Conduct, and 4-26, the harassment policy. (Id. ¶ 37.) Plaintiff subsequently filed a grievance with his union for being suspended without just cause. (Id. ¶ 40.)

Internal Affairs continued to investigate the matter and interviewed Plaintiff on September 28, 2011 about his relationship with Maksel and various incidents in which he and his brother allegedly bullied Maksel. (Id. ¶¶ 41-54.) Following Internal Affairs competing its investigation, a "Pre-Disciplinary Conference" was scheduled and eventually held on January 9, 2012, with Grimes and Plaintiff in attendance, among others. (Id. ¶¶ 57-61.) Plaintiff again admitted he told Maksel he had him "scoped" like a buck, and he further admitted to "locker

room behavior in the workplace." (Id. ¶¶ 62-63.) As the adjudicating officer, Grimes determined Plaintiff violated the Code of Conduct (AR 4-6), the harrasment policy (4-26), and the policy against workplace violence (4-42). (Id. ¶¶ 64-66.) The Reviewing Officer, Major Martin Henry, concurred in the adjudication. (Id. ¶ 67.) On February 6, 2012, a termination letter was delivered to Plaintiff's home. (Id. ¶¶ 69.) He grieved his termination through the union, and the grievance panel told Plaintiff he would have an opportunity to resign in lieu of termination. (Id. ¶¶ 71-73.) Plaintiff declined to resign, as he said he believed it would be admitting guilt. (Id. ¶ 74.)

On December 6, 2012, Plaintiff filed a two-count complaint in this Court pursuant to 42 U.S.C. § 1983 alleging that Defendants (1) violated his right to due process under the Fourteenth Amendment by suspending him without notice and a hearing and (2) violated his rights under the First Amendment by retaliating against him for filing a grievance regarding his suspension. (Doc. No. 1.) Following discovery, Defendants filed a motion for summary judgment on April 14, 2014. (Doc. No. 22.) The motion is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient

disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

**III. DISCUSSION**

Defendants Noonan and Studenroth move for summary judgment on Counts One and Two of Plaintiff's complaint. (Doc. No. 22.) First, the Court will address Defendants' contention that summary judgment is warranted on Count One as to Defendant Noonan, because Plaintiff has not uncovered facts showing that Noonan had any personal involvement in the alleged due process violation. Second, the Court will address Defendants' motion for summary judgment on Count One, which alleges that Defendants suspended him without due process in violation of the Fourteenth Amendment to the United States Constitution. Lastly, the Court will address Defendants' motion for summary judgment on Count Two, which alleges that Defendants retaliated against him in violation of the First Amendment to the United States Constitution.

      A.      **Count One: Fourteenth Amendment due process (Defendant Noonan)**

As an initial matter, Defendants assert that summary judgment must be granted in favor of Defendant Noonan on Plaintiff's Fourteenth Amendment claim because there is no evidence in the record that Noonan played any role in the decision to suspend Plaintiff, as he was not present at the meetings during which the decision to suspend Plaintiff was made. (Doc. No. 24 at 3-4.) A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff does not respond to this contention in his brief in opposition, and the Court assumes that he does not dispute this aspect of the motion. Because the Court agrees that the record does not provide evidence of Defendant Noonan's personal involvement in Plaintiff's alleged due process violation, the Court will grant summary judgment to Defendant Noonan on Count One.

### B. Count One: Fourteenth Amendment due process (Defendant Studenroth)

The Fourteenth Amendment to the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. When a plaintiff sues a state actor on the grounds that he failed to provide procedural due process, a court must inquire (1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of "life, liberty, or property;" and (2) whether the procedures available provided the plaintiff with due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). It is undisputed that Plaintiff had a property interest in his continued employment (See Doc. No. 24 at 5), so the Court's inquiry is limited to whether Defendants provided Plaintiff with adequate due process prior to suspending him without pay. Defendants argue that the undisputed facts indicate that Plaintiff was provided notice of the allegations and a chance to respond prior to his suspension, thereby satisfying due process. (Doc. No. 24 at 5-7.) Plaintiff argues that there is sufficient evidence from which a jury could conclude that Plaintiff was denied notice of the charges against him and a pre-deprivation hearing, and therefore did not receive adequate due process. (Doc. No. 27 at 4-6.)

The Third Circuit has held that where a plaintiff has a property interest in employment, due process generally requires a pre-suspension hearing. Schmidt v. Creedon, 639 F.3d 587, 595-96 (3d Cir. 2011). However, such a hearing "need not be elaborate." Id. at 596 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985). "Where adequate post-deprivation procedures are available, an employee is entitled only to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. "The hearing can be informal and need not definitively resolve the propriety of

the deprivation." Id. "It should be an initial check against mistaken decisions;" in other words, "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. "An employee is generally not entitled to notice of the reasons for his discharge in advance of a pre-deprivation hearing . . . or to present his case to an impartial decision-maker at such a hearing." Id. (internal citations omitted).

  The Court will grant Defendant Studenroth's motion for summary judgment on Plaintiff Fourteenth Amendment claim. The undisputed record reveals that on September 22, 2011, aware that his brother had brought a gun into the office the day before and had shown it to Maksel, Plaintiff pretended to point a rifle at Maksel, and told him that he had Maksel "scoped like a big buck." (Doc. No. 23 ¶¶ 17-20.) The same day, after this incident was reported, Captain Grimes met with Plaintiff and asked him what had happened with Maksel. (Id. ¶ 20.) Plaintiff admitted that the accusation was true. (Id.) Grimes asked Plaintiff if he saw a problem with his behavior, and Plaintiff responded that he did not. (Id. ¶ 22.) Grimes then informed Plaintiff that the behavior was inappropriate and asked him why he did it. (Id. ¶¶ 23-24.) Plaintiff defended himself by saying he was joking around. (Id. ¶¶ 24.) The next day, September 23, 2011, Plaintiff was informed he was to be suspended without pay for violations of the rules of conduct and the harassment policy. (Id. ¶¶ 32, 37-39.) Thus, the undisputed facts of record indicate that Plaintiff was provided notice of alleged misconduct, given an opportunity to respond, and that he confirmed the allegation of misconduct was true before disciplinary action was taken, thereby satisfying due process requirements prior to his suspension for harassing Maksel. See Loudermill, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond.").

In support of his argument that "a reasonable jury could conclude plaintiff did not receive a predetermination hearing," Plaintiff primarily argues that Defendants formally refer to a pre-determination hearing as a "Pre-Disciplinary Conference," (PDC), and that Defendants concede no formal PDC was conducted prior to the suspension.[3] (Doc. No. 27 at 4.) However, the Third Circuit has made it clear that a <u>formal</u> hearing, such as the PDC described by Plaintiff, is not required pre-suspension in order to satisfy due process. See <u>Schmidt</u>, 639 F.3d at 596 (noting that a pre-suspension hearing can be "brief and informal" and "need not definitively resolve the propriety" of the deprivation). The record indicates that Plaintiff was confronted by Grimes about the allegations that he had pretended to aim a gun at Maksel, and given an opportunity to explain why he did so. This was all done prior to the decision to suspend him without pay. (Doc. No. 23 ¶¶ 21-39.) This informal questioning complies with the Fourteenth Amendment's due process guarantees, and the fact that a full "PDC" was not initiated at the time does not change the analysis. See <u>Schmidt</u>, 639 F.3d at 596 (3d Cir. 2011) (observing that the justification behind providing a pre-suspension hearing is that it "would not impose a significant administrative or fiscal burden on the Commonwealth of Pennsylvania" and that such a hearing therefore "need not be elaborate"). Plaintiff was not entitled to an elaborate, formal proceeding prior to his suspension, merely a brief and informal "check against mistaken decisions." See <u>id.</u> at 587.

Plaintiff also appears to argue that the record supports a finding that he did not receive

---

[3] Following additional investigation, Plaintiff received a formal PDC on January 9, 2012, after his suspension but before his termination, in which the charges were again presented and he was given further chance to respond to them prior to his official termination. (Doc. No. 23 ¶¶ 61-68.)

9

sufficient notice of the charges during the meeting with Grimes. (Doc. No. 27 at 4-5.) Specifically, Plaintiff asserts that "[n]o determination had been made regarding charges until the completion of the investigation [following Plaintiff's suspension]. Without a determination of charges the Plaintiff could not knowledgeably offer an explanation." (Id.) However, Plaintiff adduces no evidence or dispute of material fact in support of his contention that he did not receive sufficient notice of the accusation at the meeting prior to his suspension.[4] Notice is meaningful and sufficient where it simply "apprises the individual of the substance of the matter at hand and permits adequate time to present any counter information and response." Andrekovich v. Chenoga, No. 11-1364, 2012 WL 3231022, at *5 (W.D. Pa. Aug. 6, 2012) (citing McDaniels v. Flick, 59 F.3d 446, 454-57 (3d Cir. 1995)). Here, the undisputed facts indicate that Plaintiff was informed of the substance of the immediate complaint against him – pretending to aim a gun at Maksel – was asked whether the accusation was true, which he confirmed, and that he defended himself on the charge by insisting he was only joking. (Doc. No. 23 ¶¶ 21-24.) This informal questioning provided Plaintiff notice and an initial check as to whether there were "reasonable grounds" to discipline him based on the incident with Maksel, see Schmidt, 639 F.3d at 596, and he was only suspended after he confirmed that he engaged in the alleged misconduct. Plaintiff argues that under the circumstances he could not "knowledgeably offer an explanation" at the time (Doc. No. 27 at 5), but does not identify for the Court any additional information or facts that he needed in order to adequately respond to the

---

[4] On a motion for summary judgment, once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

accusation or to offer an explanation for his behavior. See Gniotek v. City of Phila., 808 F.2d 241, 244 (3d Cir. 1986) (affirming grant of summary judgment and finding that notice was sufficient when it was of "such specificity to allow [plaintiff] the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges"). Following this questioning as to whether the misconduct accusation was true and therefore whether there were grounds for discipline, the decision was made the next day to suspend Plaintiff without pay. (Id. ¶¶ 33-35.) Additional investigation into Plaintiff's relationship with Maksel and a more elaborate, formal PDC followed in January 2012, after which Plaintiff's employment was terminated. (Id. ¶¶ 61-70.)

As for Plaintiff's argument that Grimes was merely "investigating" and "fact-finding" when he met with Plaintiff and that "no decision had [yet] been made regarding charges" (Doc. No. 27 at 5), due process does not require that any sort of formal charge be drafted or levied prior to a pre-deprivation hearing; neither does "notice" require that a specific formal charge be made. See Copeland v. Phila. Police Dep't, 840 F.2d 1139, 1145-46 (3d Cir. 1988) (affirming grant of summary judgment and holding that plaintiff's due process rights were not violated simply because the "city did not prepare the formal, written charges against [plaintiff] until after he had been dismissed," and, "the formal charge was based on the same information previously made available to [plaintiff], which he had the opportunity to refute"). The Court is also not persuaded by Plaintiff's argument that Grimes questioned him "but did not tell him what rules he allegedly broke." (Doc. No. 27 at 5.) Third Circuit precedent indicates that notice need only contain enough specificity to make the nature of the plaintiff's conduct clear, and in such an instance a failure to identify a specific broken "rule" does not offend due process. See Schmidt

639 F.3d at 599-600 (affirming summary judgment and finding that where notice "described in sufficient detail the alleged conduct," the Defendants' failure to "identify the specific rules that they claimed his conduct violated" did not deprive the plaintiff of due process) (emphasis added).

Accordingly, the Court finds that the undisputed facts indicate that Plaintiff was given notice of the charges against him and a chance to respond prior to his suspension without pay, thereby providing him "an initial check against mistaken decisions."  See Schmidt, 639 F.3d at 587.  Because the record reveals that Plaintiff was afforded due process prior to his suspension, the Court will grant summary judgment to Defendant Studenroth on Count One.

        **D.**       **Count Two: First Amendment Retaliation**

Defendants also move for summary judgment on Count Two, in which Plaintiff alleges that Defendants violated his First Amendment rights by terminating him in retaliation for utilizing the grievance process regarding his suspension. (Doc. No. 22.)  Defendants argue that the undisputed record shows that Plaintiff did not engage in protected speech, nor was there any causal link between his grievance and the termination. (Doc. No. 24 at 7-11.)  Plaintiff does not respond to Defendants' motion regarding the retaliation claim.

To establish a Section 1983 First Amendment retaliation claim, a plaintiff must show: (1) the plaintiff participated in activity protected by the First Amendment; (2) the defendant retaliated against the plaintiff in a manner that would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and (3) a causal nexus existed between the protected activity and the retaliation.  Alers v. City of Phila., 919 F. Supp. 2d 528, 553 (E.D. Pa. 2013) (citing Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)).  "Where a public employee claims First Amendment retaliation by a government employer, the plaintiff-

employee must demonstrate that he 'spoke as a citizen on a matter of public concern' for his activity to be protected by the First Amendment. Id. (citing Borough of Duryea, Pa. v. Guarnieri, 131 S.Ct. 2488, 2493 (2011).

Defendants argue, and the Court agrees, that the record does not indicate that Plaintiff spoke on a matter of public concern. Guarnieri, 131 S. Ct. at 2501 ("A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context.") The record also does not indicate that there is a causal connection between Plaintiff's grievance and his termination, as it is undisputed that Plaintiff was terminated upon a finding that he violated rules of workplace conduct. (Doc. No. 23 ¶ 69-70.) Accordingly, because there are no triable issues of disputed fact precluding judgment in favor of Defendants on Plaintiff's First Amendment retaliation claim, the Court will grant summary judgment to Defendants on Count Two.

## IV.    CONCLUSION

The Court finds that Plaintiff has not adduced evidence or a material dispute of fact in support of his procedural due process and retaliation claims, and will grant summary judgment to Defendants on both counts of Plaintiff's complaint.[5] An order consistent with this memorandum

---

[5] Because the Court finds that Defendants are entitled to summary judgment and did not violate Plaintiff's constitutional rights, it does not need to address Defendants' alternative argument that they are entitled to qualified immunity. See Higgins v. Borough of Taylor, No. 07-622, 2009 WL 1505611, at *6 (M.D. Pa. May 27, 2009) (citing Sanford v. Stiles, 456 F.3d 298, 313 (3d Cir. 2006)).

follows.